**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 South Bayshore Drive, Suite 220
Miami, FL 33133
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH STEWART, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br>  v.<br><br>HILL'S PET NUTRITION, INC.<br><br>       Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Deborah Stewart ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following on information and belief, except that Plaintiff's allegations as to her own actions are based on personal knowledge:

## NATURE OF THE ACTION

1.     Defendant Hill's Pet Nutrition, Inc. ("Defendant") manufacturers, markets, advertises, labels, and sells various brands of pet food, including Hill's Prescription Diet and Hill's Science Diet dog foods.

2.     Defendant advertises the Prescription Diet dog food as follows:  "Life is just more fun when your dog is healthy.  That's why we work with your veterinarian to deliver the best nutrition-based solutions that help you recapture a normal, vibrant life together."[1]

3.     Defendant advertises the Science Diet dog food as follows:  "Feed your dog's best life with biology-based nutrition."[2]  Defendant also claims the Science Diet is "Veterinarian Recommended."[3]

4.     Plaintiff purchased Hill's® Prescription Diet® i/d® Canine Chicken & Vegetable Stew 12.5oz and Hill's® Prescription Diet® i/d® Canine 13oz dog food for her dog, Roxy.

5.     The label of these particular products advertises that it offers "Clinical Nutrition" and "Therapeutic Dog Nutrition."  The label also represents that the products "provide[] complete and balanced nutrition for maintenance of adult dogs and growing puppies."  Plaintiff purchased Hill's Prescription Diet dog food for Roxy based on Hill's advertising and representations.  But they were false

6.     The food was not therapeutic.  Nor did it provide balanced nutrition.  Instead, both the Prescription Diet and Science Diet dog foods contained elevated, toxic levels of vitamin D.

[1] https://www.hillspet.com/prescription-diet/dog-food.
[2] https://www.hillspet.com/science-diet/dog-food.
[3] *Id.*

7.    "While vitamin D is an essential nutrient for dogs, ingestion of elevated levels can lead to potential health issues . . . such as vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss."[4]  In greater doses, consuming elevated levels of vitamin D can lead to renal failure and death.[5]

8.    Plaintiff purchased recalled batches of the food, and fed it to her dog, Roxy.

9.    As a result of consuming the recalled dog food, Roxy exhibited numerous symptoms of vitamin D poisoning, these include: substantial weight loss, vomiting, and loss of appetite.  These issues placed an emotional and financial strain on Plaintiff.

10.    On January 31, 2019, Defendant issued a recall of their Prescription Diet and Science Diet dog foods.[6]  However, by that point, Plaintiff had already been feeding Roxy the recalled food for some time.

11.    In its video announcement for the recall, Defendant states it "now ha[s] tighter quality controls in place to prevent this from happening again."[7]

12.    However, these "tighter quality controls" are of cold comfort to Plaintiff and Class members, who paid for the dog food containing toxic levels of vitamin D and fed it to their pets.

13.    As a result of this contamination, the dog food bought by Plaintiff is worthless. Plaintiff and Class members were damaged by the full purchase price of the Prescription Diet and Science Diet dog foods that contained elevated levels of vitamin D.

14.    Plaintiff brings this action on behalf of herself and all others similarly situated for equitable relief and to recover damages and restitution for: (i) breach of express warranty, (ii) breach of the implied warranty of merchantability, (iii) fraud, (iv) fraudulent omission, (v)

---

[4] https://www.fda.gov/Safety/Recalls/ucm630232.htm
[5] *Id.*
[6] https://www.hillspet.com/productlist#press-release.
[7] *Id.*

negligence, (vi) strict products liability, (vii) unjust enrichment, (viii) violation of the California Consumer Legal Remedies Act (injunctive relief only), (xix) violation of California's False Advertising Law, and (x) violation of California's Unfair Business Practices Law.

## PARTIES

15.     Plaintiff Deborah Stewart is, and at all times mentioned herein was, a resident of San Francisco, California, and a citizen of the State of California.  Ms. Stewart's dog, Roxy, is a chihuahua.  Ms. Stewart fed Roxy Hill's Prescription Diet dog food in 2018 and 2019, until learning of the recall.  Ms. Stewart purchased Hill's Prescription Diet dog food from chewy.com, and from local retailers, based on the nutritional and quality control claims and representations she saw on the product's packaging and through online advertisements.  But as a result of eating Hill's Prescription Diet dog food, in late 2018, Roxy began suffering from vomiting—up to several times a week, if not up to several times a day—and loss of appetite.  Roxy also lost a substantial amount of body weight.  These medical issues are symptoms of vitamin D toxicity.  As a result of Roxy's medical issues, Ms. Stewart incurred medical expenses including veterinary bills and treatments. When purchasing the specified Prescription Diet dog food, Plaintiff reviewed the accompanying labels, and understood them as representations and warranties by the manufacturer that the food was properly manufactured and free from defects.  Plaintiff Stewart relied on these representations and warranties in deciding to purchase the specified Prescription Diet dog food from Defendant. These representations and warranties were part of the basis of the bargain, in that she would not have purchased the specified Prescription Diet dog food had she known that it was not, in fact, properly manufactured and free from defects.  Plaintiff also understood that each purchase involved a direct transaction between herself and Hill's because the Prescription Diet dog food came with packaging prepared by Hill's, including the representations and warranties that the specified Prescription Diet dog food was therapeutic and properly manufactured free from defects.

16.    Defendant Hill's Pet Nutrition, Inc. is a Delaware corporation.  Its principal place of business is in Kansas, at 400 SW 8th Avenue, Topeka, Kansas, 66603.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed class; (b) some members of the proposed class have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28 U.S.C. § 1332(d)(2) and (6).

18.    Venue is proper in this Court under 28 U.S.C. § 1391 because Plaintiff Stewart resides in this District and a substantial part of the events giving rise to Plaintiff Stewart's claims took place within this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

A.    **Defendant's Food Products**

1.    Defendant's Prescription Diet Dog Food

19.    Defendant formulates, develops, manufactures, labels, packages, distributes, markets, advertises, and sells Hill's Prescription Diet dog food at veterinary clinics and pet retailers across the United States, as well as through online retailers like Amazon and Chewy.  Regardless of where they are purchased, Prescription Diet dog foods bear the same labeling and packaging as on Defendant's website.

20.    There are a number of varieties of Prescription Diet dog food, each representing that they are targeted at a specific health condition.  These conditions include, but are not limited to,

   

  

digestive care, kidney care, weight management (metabolic), urinary care, skin/food sensitivities, joint care, and aging.

21.    On its website page for Prescription Diet dog food, Defendant states it "work[s] with your veterinarian to deliver the best nutrition-based solutions that help you recapture a normal, vibrant life together [with your dog]."[8]

22.    On this same page, under the "Hill's + Vets" tab, Defendant states: "No matter what health issue your dog is facing, our alliance with veterinarians puts us in a unique position to find a solution."[9]  Defendant encourages consumers to "[a]sk [their] vet how the Prescription Diet® dog foods can help [their dog's] weight, mobility, kidney, digestive, urinary and skin coat health."[10]

---

[8] https://www.hillspet.com/prescription-diet/dog-food#learnMore.
[9] *Id.*
[10] *Id.*

23.     On this same page, under the "Quality" tab, Defendant states: "Peace of mind is priceless.  That's why only the best ingredients from the most trusted sources are the foundation for all Prescription Diet® foods."[11]  Defendant further represents under the "Quality" tab it "conduct[s] 5 million quality and safety checks per year at the facility as well as voluntary third-party inspections nearly every month to ensure that we are maintaining the highest standards."[12]

24.     As indicated above, however, these representations and warranties are false. Defendant failed to ensure the quality and safety of its Prescription Diet formulations, which led to them containing elevated and toxic levels of vitamin D, which is acutely harmful to dogs.

2.     Defendant's Science Diet Dog Food

25.     Defendant formulates, develops, manufactures, labels, packages, distributes, markets, advertises, and sells Hill's Science Diet dog food at veterinary clinics and pet retailers across the United States, as well as through online retailers like Amazon and Chewy.  Regardless of where they are purchased, Science Diet dog foods bear the same labeling and packaging as on Defendant's website.

26.     Defendant produces several varieties of Science Diet dog food for different aged dogs, including puppy (less than one year old), ages one to six, and ages seven and up.

---

[11] *Id.*
[12] *Id.*

  

27.     Although it does not require a prescription to purchase, each can of Science Diet dog food claims that it is "veterinarian recommended" beneath the logo.

28.     On the Science Diet dog food page on Defendant's website, Defendant elaborates on the "veterinarian recommended" claim: "Vets are experts in your dog's health – and more of them recommend the biology-based nutrition of Hill's Science Diet than any other brand."[13]

29.     Indeed, Defendant alleges on the Science Diet dog food page that it "understands what dogs need to live a long and healthy life," and that it developed the Science Diet dog food "with the combined expertise of 220+ vets, scientists and pet nutritionists."[14]

30.     Rather than providing a "long and healthy life," Class members that used the Science Diet dog food saw their dogs become ill, or even die, as a result of consuming the food.

31.     Hill's Science Diet formulations suffered from an identical defect as its Prescription Diet formulations, to wit hazardous levels of vitamin D.  Purchasers of Hill's Science Diet suffered an identical injury as users of its Prescription Diet.

---

[13] https://www.hillspet.com/science-diet/dog-food#browse-foods.
[14] *Id.*

3.     Defendant's Quality and Safety Standards

32.     On the "Quality & Safety" page of its website, Defendant claims it has a "proven commitment to quality and safety," and asks consumers to "trust the Hill's standard."[15]  These quality and safety standards are applicable to all of Defendant's products.

33.     In developing its products, Defendant states: "More than 220 veterinarians, food scientists, technicians and Ph.D. nutritionists at Hill's develop all of Hill's pet foods to meet the needs of your pets."[16]

34.     In sourcing their ingredients, Defendant states: "Not only is each ingredient examined to ensure its safety, we also analyze each product's ingredient profile for essential nutrients to ensure your pet gets the stringent, precise formulation they need."[17]

35.     In manufacturing their products, Defendant states: "We conduct annual quality systems audits for all manufacturing facilities to ensure we meet the high standards your pet deserves.  We demand compliance with current Good Manufacturing Practices (cGMP) and Hill's high[-]quality standards, so your pet's food is produced under clean and sanitary conditions."

36.     As to the finished product, Defendant states: "We conduct final safety checks daily on every Hill's pet food product to help ensure the safety of your pet's food.  Additionally, all finished products are physically inspected and tested for key nutrients prior to release to help ensure your pet gets a consistent product bag to bag."

37.     Despite these allegedly stringent quality and safety standards, Defendant's Prescription Diet and Science Diet dog foods became contaminated with toxic levels of vitamin D, causing harm to dogs owned by Plaintiff and Class members.

---

[15] https://www.hillspet.com/about-us/quality-and-safety.
[16] *Id.*
[17] *Id.*

**B.      The Product Recall**

38.      Beginning in November 2018, eight dog food brands (not including Defendant)

issued recalls of their products, citing elevated levels of vitamin D.[18]

39.      Excessive consumption of vitamin D can lead to a plethora of health issues in dogs,

as Defendant itself notes:

> While vitamin D is an essential nutrient for dogs, ingestion of elevated levels can
> lead to potential health issues depending on the level of vitamin D and the length of
> exposure, and dogs may exhibit symptoms such as vomiting, loss of appetite,
> increased thirst, increased urination, excessive drooling, and weight loss. Vitamin
> D, when consumed at very high levels, can lead to serious health issues in dogs
> including renal dysfunction.[19]

40.      Each of these eight other dog food manufacturers share the same contract

manufacturer as Defendant, according to the FDA.[20]  Yet, Defendant did not issue a recall at the

same time as these other manufacturers.  Instead, Defendant waited several months to issue a

recall.

41.      Defendant claims it "learned of the potential for elevated vitamin D levels in some

of its canned dog foods after receiving a complaint in the United States about a dog exhibiting

signs of elevated vitamin D levels."[21]  Defendant does not state when it received this complaint.

42.      Defendant subsequently investigated this issue and "confirmed elevated levels of

vitamin D due to a supplier error."[22]

43.      On January 31, 2019, as a result of these dangers, Defendant recalled the following

products[23]:

---

[18] https://www.fda.gov/animalveterinary/newsevents/ucm627485.htm.
[19] https://www.hillspet.com/productlist#press-release.
[20] https://www.cbsnews.com/news/hills-dog-food-recal-pet-owners-report-dog-deaths-from-recalled-food-with-vitamin-d-dangers-on-social-media/.
[21] https://www.fda.gov/Safety/Recalls/ucm630232.htm.
[22] *Id.*
[23] *Id.*

| Product Name | SKU Number | Date Code/Lot Code |
|---|---|---|
| Hill's® Prescription Diet® c/d® Multicare Canine Chicken & Vegetable Stew 12.5oz | 3384 | 102020T10 |
| | | 102020T25 |
| Hill's® Prescription Diet® i/d® Canine Chicken & Vegetable Stew 12.5oz | 3389 | 102020T04 |
| | | 102020T10 |
| | | 102020T19 |
| | | 102020T20 |
| Hill's® Prescription Diet® i/d® Canine Chicken & Vegetable Stew 5.5oz | 3390 | 102020T11 |
| | | 112020T23 |
| | | 122020T07 |
| Hill's® Prescription Diet® z/d® Canine 5.5oz | 5403 | 102020T17 |
| | | 112020T22 |
| Hill's® Prescription Diet® g/d® Canine 13oz | 7006 | 112020T19 |
| | | 112020T20 |
| Hill's® Prescription Diet® i/d® Canine 13oz | 7008 | 092020T30 |
| | | 102020T07 |
| | | 102020T11 |
| | | 112020T22 |
| | | 112020T23 |
| Hill's® Prescription Diet® j/d® Canine 13oz | 7009 | 112020T20 |
| Hill's® Prescription Diet® k/d® Canine 13oz | 7010 | 102020T10 |
| | | 102020T11 |
| Hill's® Prescription Diet® w/d® Canine 13oz | 7017 | 092020T30 |
| | | 102020T11 |
| | | 102020T12 |
| Hill's® Prescription Diet® z/d® Canine 13oz | 7018 | 102020T04 |
| | | 112020T22 |
| Hill's® Prescription Diet® Metabolic + Mobility Canine Vegetable & Tuna Stew 12.5oz | 10086 | 102020T05 |
| | | 102020T26 |
| Hill's® Prescription Diet® w/d® Canine Vegetable & Chicken Stew 12.5oz | 10129 | 102020T04 |
| | | 102020T21 |
| Hill's® Prescription Diet® i/d® Low Fat Canine Rice, Vegetable & Chicken Stew 12.5oz | 10423 | 102020T17 |
| | | 102020T19 |
| | | 112020T04 |
| Hill's® Prescription Diet® Derm Defense® Canine Chicken & Vegetable Stew 12.5oz | 10509 | 102020T05 |

| | | |
|---|---|---|
| Hill's® Science Diet® Adult 7+ Small & Toy Breed Chicken & Barley Entrée Dog Food 5.8oz | 4969 | 102020T18 |
| Hill's® Science Diet® Puppy Chicken & Barley Entrée 13oz | 7036 | 102020T12 |
| Hill's® Science Diet® Adult Chicken & Barley Entrée Dog Food 13oz | 7037 | 102020T13 |
| | | 102020T14 |
| | | 112020T23 |
| | | 112020T24 |
| Hill's® Science Diet® Adult Turkey & Barley Dog Food 13oz | 7038 | 102020T06 |
| Hill's® Science Diet® Adult Chicken & Beef Entrée Dog Food 13oz | 7040 | 102020T13 |
| Hill's® Science Diet® Adult Light with Liver Dog Food 13oz | 7048 | 112020T19 |
| Hill's® Science Diet® Adult 7+ Chicken & Barley Entrée Dog Food 13oz | 7055 | 092020T31 |
| | | 102020T13 |
| Hill's® Science Diet® Adult 7+ Beef & Barley Entrée Dog Food 13oz | 7056 | 092020T31 |
| | | 112020T20 |
| | | 112020T24 |
| Hill's® Science Diet® Adult 7+ Turkey & Barley Entrée 13oz | 7057 | 112020T19 |
| Hill's® Science Diet® Adult 7+ Healthy Cuisine Braised Beef, Carrots & Peas Stew dog food 12.5oz | 10452 | 102020T14 |
| | | 102020T21 |
| Hill's® Science Diet® Adult 7+ Youthful Vitality Chicken & Vegetable Stew dog food 12.5oz | 10763 | 102020T04 |
| | | 102020T05 |
| | | 112020T11 |

44.     The recall affects 675,000 cases of canned dog food.[24]

45.     Contrary to Defendant's voluminous representations and assurances regarding the quality of its food and quality control processes, Defendant made an about-face in its video announcing the recall, stating it "now ha[s] tighter quality controls in place to prevent this from

---

[24] https://www.cbsnews.com/news/hills-dog-food-recal-pet-owners-report-dog-deaths-from-recalled-food-with-vitamin-d-dangers-on-social-media/.

happening again."[25]   As such, Defendant misrepresented that it used "the <u>highest standards</u>" for production of its dog food.[26]

46.     Further, these new standards are of little meaning to consumers who wasted their money on Defendant's dangerous products, which contrary to all alleged benefits, caused consumers' beloved companions get sick, and even die.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

48.     Plaintiff proposes the following Class definition: All persons in the United States who purchased Hill's Prescription Diet or Science Diet dog food with elevated levels of vitamin D (the "Nationwide Class").

49.     Plaintiff represents, and is a member of, this proposed class.  Excluded from the Nationwide Class is Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge and/or Magistrate Judge to whom this action is assigned and any member of such Judges' staffs and immediate families.

50.     Plaintiff also seeks to represent a Subclass of all Class Members who purchased Hill's Prescription Diet or Science Diet dog food with elevated levels of vitamin D in California (the "California Subclass") (collectively, "Class").

51.     **Numerosity.** The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates there are hundreds of thousands of members in the Class. Plaintiff does not know the exact number of members in the proposed Class, but reasonably

---

[25] https://www.hillspet.com/productlist#press-release.
[26] <u>https://www.hillspet.com/prescription-diet/dog-food#learnMore</u> (under "Quality" tab); *see also* § A.3 *supra*.

believe, based on the scale of Defendant's business and the number of recalled cases of cans, that the Class is so numerous that individual joinder would be impracticable.

52.    The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  Members of the proposed Class can be identified easily through records maintained by Defendant and retailers.  Thus, Class members may be identified and notified of the pendency of this action by U.S. Mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

53.    **Existence and predominance of common questions of law and fact.**  There are well defined, nearly identical, questions of law and fact affecting all parties.  The questions of law and fact involving the class claims predominate over questions which may affect individual members of the proposed Class.  Those common question of law and fact include, but are not limited to, the following:

a.    Whether Defendant owed a duty of care to Plaintiff and the Class;

b.    Whether the Prescription Diet and Science Diet dog foods that contained hazardous and excessive levels of vitamin D are adulterated and unfit for their intended purpose;

c.    Whether Defendant knew or should have known that the Prescription Diet and Science Diet dog foods contained excessive levels of vitamin D and other ingredients that do not conform to the products' labels, packaging, and advertising, and Defendant's statements about the products' quality and safety;

d.    Whether Defendant recklessly, intentionally, and/or fraudulently failed to test for the presence of excessive vitamin D or other ingredients that do not conform to the products' labels, packaging, and advertising, and Defendant's statements about the products' quality and safety;

e.  Whether Defendant wrongfully represented and continues to represent that Prescription Diet and Science Diet dog foods are suitable for consumption by dogs, healthy, nutritious, clinically approved, subject to strict quality control measures, and/or unadulterated;

f.  Whether Defendant wrongfully represented and continues to represent that the manufacturing of Prescription Diet and Science Diet dog foods is subjected to rigorous quality and safety standards;

g.  Whether Defendant wrongfully failed to state that Prescription Diet and Science Diet dog foods contained (or had a risk or probability of containing) excessive levels of vitamin D and/or unnatural or other ingredients that do not conform to the labels, packaging, advertising, and statements;

h.  Whether Defendant's representations in advertising, statements, packaging and/or labeling is false, deceptive, and misleading;

i.  Whether Defendant's representations regarding its Prescription Diet and Science Diet products are likely to deceive a reasonable consumer;

j.  Whether a reasonable consumer would consider the excessive vitamin D or other ingredients that do not conform to the labels, packaging, advertising, and statements as a material fact in purchasing pet food;

k.  Whether Defendant had knowledge that their representations were false, deceptive, and misleading;

l.  Whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

m.  Whether a representation that a product is suitable for consumption by dogs, healthy, nutritious, premium, clinically approved, subject to strict quality control measures, and/or unadulterated is material to a reasonable consumer;

n.  Whether Defendant's representations and descriptions on the labeling of the Prescription Diet and Science Diet dog foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

o.  Whether Defendant's conduct was negligent;

p.  Whether Defendant's conduct was fraudulent;

q.  Whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

r.  Whether Defendant is liable for damages, and the amount of such damages; and

s.  Whether Defendant should be enjoined from engaging in such conduct in the future.

54.  **Typicality**.  Plaintiff asserts claims that are typical of each member of the Class because they are each people who purchased at least one can of either Hill's Prescription Diet or Science Diet dog food that contained elevated levels of vitamin D, without the knowledge that said can contained toxic levels of vitamin D, and whose dogs were harmed by ingesting toxic levels of vitamin D.  Plaintiff will fairly and adequately represent and protect the interests of the proposed Class, and has no interests which are antagonistic to any member of the proposed Class.

55.  **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel experienced in handling complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.  Further, Plaintiff has no interests that are antagonistic to those of the Class.

56.  **Superiority**.  A class action is the superior method for the fair and efficient adjudication of this controversy.  Class-wide relief is essential to compel Defendant to comply with

industry quality control and safety standards and deter such a tragedy from happening again.  The interest of the members of the proposed Class in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action are relatively small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class-action claims because each consumer was harmed in an identical manner.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class-action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

57.     In the alternative, the Class may also be certified because:

(a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

**COUNT I**
**Breach Of Express Warranty**
**(On Behalf Of The Nationwide Class And Subclass)**

58.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

59.     Plaintiff brings this cause of action on behalf of herself and all members of the Nationwide Class and Subclass.

60.     Plaintiff, and each member of the Nationwide Class and Subclass, formed a contract with Defendant at the time Plaintiff and other Class members purchased the Prescription Diet and Science Diet dog food that contained toxic levels of vitamin D.  The terms of the contract include the promises and affirmations of fact made by Defendant on the dog food's packaging and through marketing and advertising.  This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

61.     Specifically, Defendant expressly warranted, advertised, and represented to Plaintiff and the Nationwide Class and Subclass that their Prescription Diet and Science Diet dog foods were:

    a.   Safe for consumption by dogs;

    b.   Made with the highest quality control and safety standards;

    c.   Made with ingredients that are "examined to ensure [their] safety . . . [and] ensure your pet gets the stringent, precise formulation they need";

    d.   That the Prescription Diet provided "Therapeutic Dog Nutrition";

e.   That the Prescription Diet "provides complete and balanced nutrition for maintenance of adult dogs and growing puppies";

f.   Recommended by or developed in cooperation with veterinarians and other medical professionals; and

g.   Will assist with a variety of medical conditions in dogs, or generally help dogs "live a long and healthy life."

62.   Defendant made these express warranties regarding its Prescription Diet and Science Diet dog foods' quality, ingredients, and fitness for consumption in writing through its website, advertisements, marketing materials and on the Prescription Diet and Science Diet dog foods' packaging and labels.

63.   Defendant's advertisements, warranties, and representations were made in connection with the sale of the Prescription Diet and Science Diet dog foods to Plaintiff and the Nationwide Class and Subclass.

64.   Plaintiff and the Nationwide Class and Subclass reviewed and relied on Defendant's advertisements, warranties, and representations regarding the Prescription Diet and Science Diet dog foods in deciding whether to purchase Defendant's products.

65.   Defendant's Prescription Diet and Science Diet dog foods do not conform to Defendant's advertisements, warranties, and representations in that they:

a.   Were sold with hazardous, elevated levels of vitamin D despite being advertised as safe for consumption and providing balanced nutrition;

b.   Were not made under high quality control and safety standards;

c.   Did not bestow upon dogs the "precise formulation" dogs need because the dog foods contained hazardous levels of vitamin D;

d.  Did not offer therapeutic or balanced nutrition because the dog foods contained hazardous levels of vitamin D which is acutely harmful to dogs; and

e.  Harmed and even killed dogs, rather than treating medical conditions or generally helping dogs "live a long and healthy life."

66.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Nationwide Class and Subclass suffered actual damages in that they purchased Prescription Diet and Science Diet dog foods that were worthless.  Plaintiff and the Class would not have purchased the food at all had they known of the risk and/or presence of excessive levels of vitamin D that rendered the products hazardous and unsafe for Plaintiff's and the Class's pets to consume.

67.     As a result of Defendant's breach of its express warranties, Plaintiff and the Nationwide Class and Subclass are entitled to actual damages for the price of Prescription Diet and Science Diet dog food cans they purchased and medical expenses related to the treatment of their dogs.

68.     Plaintiff and the Nationwide Class and Subclass are also entitled to, and do seek injunctive relief ensuring Defendant complies with all proper quality and safety standards going forward.

69.     Plaintiff and the Nationwide Class and Subclass are also entitled to an award of attorneys' fees and costs.

70.     On March 1, 2019, prior to filing this action, Defendant was served with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiff's counsel sent Defendant a letter advising that it breached express warranties and demanded that it cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as Exhibit A.

**COUNT II**
**Breach Of The Implied Warranty Of Merchantability**
**(On Behalf of The Nationwide Class And Subclass)**

71.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

72.    Plaintiff brings this cause of action on behalf of herself and all members of the Nationwide Class and Subclass.

73.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Nationwide Class and Subclass.

74.    There was a sale of goods from Defendant to Plaintiff and members of the Nationwide Class and Subclass.

75.    At all times mentioned herein, Defendant manufactured and supplied the Prescription Diet and Science Diet dog foods.

76.    Defendant breached the warranty implied in the contract for the sale of the Prescription Diet and Science Diet dog foods because the products could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because they contained toxic levels of vitamin D.  As such, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

77.    Plaintiff and the Class relied on Defendant's promises and affirmations of fact when purchasing the Prescription Diet and Science Diet dog foods.  Plaintiff and the Class relied on Defendant's skill and judgment and the implied warranties of fitness for the purpose for which the food is used, namely to provide safe and/or therapeutic nutrition to dogs.

78.    Plaintiff and the Class did not alter the Prescription Diet and Science Diet dog foods they purchased.

CLASS ACTION COMPLAINT                                                                              20

79.     The Prescription Diet and Science Diet dog foods were defective when they left the exclusive control of Defendant.

80.     Defendant knew the food would be purchased and used without any additional testing by Plaintiff and the Class.

81.     The food was defectively manufactured and unfit for its intended purpose because of the hazardous levels of vitamin D included in the Prescription Diet and Science Diet dog foods. As such, Plaintiff and the Class did not receive the goods as warranted.

82.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class suffered harm because: (a) they would not have purchased the Prescription and Science Diet dog foods on the same terms had they known the food contained harmful levels of vitamin D; and (b) the Prescription Diet and Science Diet dog foods do not have the characteristics, ingredients, uses, or benefits as promised by Defendant.

83.     As a result of Defendant's breach of implied warranties, Plaintiff and the Class are entitled to actual damages for the price of Prescription Diet and Science Diet dog food cans they purchased and medical expenses related to the treatment of their dogs.

84.     Plaintiff and the Nationwide Class are also entitled to, and do seek injunctive relief ensuring Defendant complies with all proper quality and safety standards going forward.

85.     Plaintiff and the Class are entitled to an award of attorneys' fees and costs.

## COUNT III
### Fraud
### (On Behalf Of The Nationwide Class And Subclass)

86.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

87.     Plaintiff brings this cause of action on behalf of herself and all members of the Nationwide Class and Subclass.

88.     Defendant represented to Plaintiff and the Nationwide Class and Subclass that their Prescription Diet and Science Diet dog foods were:

a.   Safe for consumption by dogs;

b.   Made with the highest quality control and safety standards;

c.   Made with ingredients that are "examined to ensure [their] safety . . . [and] ensure your pet gets the stringent, precise formulation they need";

d.   That the Prescription Diet provided "Therapeutic Dog Nutrition";

e.   That the Prescription Diet "provides complete and balanced nutrition for maintenance of adult dogs and growing puppies";

f.   Recommended by or developed in cooperation with veterinarians and other medical professionals; and

g.   Will assist with a variety of medical conditions in dogs, or generally help dogs "live a long and healthy life."

89.     Defendant intentionally and knowingly made these representations to induce Plaintiff and members of the Nationwide Class and Subclass to purchase their Prescription Diet and Science Diet dog foods.

90.     Plaintiff and members of the Nationwide Class relied on these representations when purchasing the Prescription Diet and Science Diet dog foods.

91.     Defendant knew that their representations about the Prescription Diet and Science Diet dog foods were false in that they:

a.   Were sold with hazardous, elevated levels of vitamin D despite being advertised as safe for consumption and providing balanced nutrition;

b.   Were not made under high quality control and safety standards;

c.   Did not bestow upon dogs the "precise formulation" dogs need because the dog foods contained hazardous levels of vitamin D;

d.   Did not offer therapeutic or balanced nutrition because the dog foods contained hazardous levels of vitamin D which is acutely harmful to dogs; and

e.   Harmed and even killed dogs, rather than treating medical conditions or generally helping dogs "live a long and healthy life."

92.   Defendant knew that the food was defective months before the recall was ultimately announced, as evidenced by the fact that other manufacturers had previously recalled food from the same supplier for elevated levels of vitamin D.

93.   Plaintiff and Class members' reliance on these representations was reasonable given Defendant's advertising, representations, warranties, and general promotions of their Prescription Diet and Science Diet dog foods.

94.   Plaintiff and members of the Class did not know that Defendant's representations were false.

95.   As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Prescription Diet and Science Diet dog foods that were worthless.  Plaintiff and Class members would not have purchased the Prescription Diet and Science Diet dog food at all had they known of the risk and/or presence of excessive levels of vitamin D that rendered the products hazardous to their respective pets.

96.   As a result of Defendant's fraudulent misrepresentations, Plaintiff and the Class are entitled to actual damages for the price of Prescription Diet and Science Diet dog food cans they purchased and medical expenses related to the treatment of their dogs.  As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

97.     Plaintiff and the Nationwide Class are also entitled to, and do seek injunctive relief ensuring Defendant complies with all proper quality and safety standards going forward.

98.     Plaintiff and the Class are also entitled to an award of attorneys' fees and costs.

**COUNT IV**
**(Fraudulent Omission)**
**(On Behalf Of The Nationwide Class And Subclass)**

99.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

100.    Plaintiff brings this cause of action on behalf of herself and all members of the Nationwide Class and Subclass.

101.    Defendant concealed from and failed to disclose to Plaintiff and the Class that their Prescription Diet and Science Diet dog foods do not conform to the products' labels, packaging, advertising, and statements in that they contained hazardous levels of vitamin D.

102.    Defendant had a duty to disclose to Plaintiff and members of the Class the true quality, characteristics, ingredients, nutrient levels, and suitability of the Prescription Diet and Science Diet dog foods because:

   a.   Defendant was in a superior position to know the true nature of their products;

   b.   Defendant was in a superior position to know the actual quality of ingredients, nutrient levels, characteristics, and suitability of Prescription Diet and Science Diet dog foods; and

   c.   Defendant knew that Plaintiff and members of the Class could not reasonably have been expected to learn or discover that the Prescription Diet and Science Diet dog foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Prescription Diet and Science Diet dog foods.

103.    The facts concealed or not disclosed by Defendant to Plaintiff and members of the Class were material in that a reasonable consumer would have considered them important when deciding whether to purchase the Prescription Diet and Science Diet dog foods.

104.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class were material in that the Prescription Diet and Science Diet dog foods were advertised as safe, nutritious, and made under high quality and safety control standards, when in fact the dog foods were not.

105.    Plaintiff and Class members' reliance on these omissions was reasonable given Defendant's advertising, representations, warranties, and general promotions of their Prescription Diet and Science Diet dog foods.

106.    Plaintiff and members of the Class did not know that Defendant was concealing or otherwise omitting material facts.

107.    As a direct and proximate result of Defendant's omissions, Plaintiff and the Class have suffered actual damages in that they purchased Prescription Diet and Science Diet dog foods that were worthless.  Plaintiff and Class members would not have purchased the Prescription Diet and Science Diet dog foods at all had they known of the risk and/or presence of excessive levels of vitamin D that rendered the products hazardous to their pets.

108.    As a result of Defendant's fraudulent omissions, Plaintiff and the Class are entitled to actual damages for the price of Prescription Diet and Science Diet dog food cans they purchased and medical expenses related to the treatment of their dogs.  As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

109.    Plaintiff and the Class are also entitled to, and do seek injunctive relief ensuring Defendant complies with all proper quality and safety standards going forward.

110.    Plaintiff and the Nationwide Class and Subclass are also entitled to an award of attorneys' fees and costs.

**COUNT V**
**Negligence**
**(On Behalf Of The Nationwide Class And Subclass)**

111.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

112.    Plaintiff brings this cause of action on behalf of herself and all members of the Nationwide Class and Subclass.

113.    Defendant owed a duty to Plaintiff and the Class to exercise reasonable care in the formulation, testing, manufacturing, marketing, distribution, and sale of Prescription Diet and Science Diet dog foods.

114.    Defendant breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling its Prescription Diet and Science Diet dog food to Plaintiff and the Class that contained hazardous levels of vitamin D, despite Defendant's representations that said dog food was safe, nutritious, beneficial, and made under high quality and safety standards.

115.    Defendant knew or should have known that their Prescription Diet and Science Diet dog foods contained hazardous levels of vitamin D.

116.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Nationwide Class have suffered actual damages in that they purchased Prescription Diet and Science Diet dog foods that were worthless, and were forced to incur medical expenses treating their dogs that ingested toxic levels of vitamin D.

117.   As a result of Defendant's negligence, Plaintiff and the Class are entitled to actual damages for the price of Prescription Diet and Science Diet dog food cans they purchased and medical expenses related to the treatment of their dogs.

118.   Plaintiff and the Class are also entitled to an award of attorneys' fees and costs.

**COUNT VI**
**Strict Products Liability – Manufacturing Defect**
**(On Behalf Of The Nationwide Class And Subclass)**

119.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

120.   Plaintiff brings this cause of action on behalf of herself and all members of the Nationwide Class and Subclass.

121.   The hazardous levels of vitamin D contained in Defendant's Prescription Diet and Science Diet dog foods was a mishap in the manufacturing process which led to the food's containing elevated levels of vitamin D, which caused harm to Plaintiff's dog and those of the Class.

122.   Due to the hazardous levels of vitamin D, the product was not reasonably safe as marketed because the food was toxic to dogs, and caused significant harm, even death.  Indeed, the defect prompted a recall, underscoring that the defective product was both unsafe and unusable.

123.   Plaintiff an Class members used the product for its intended purpose and did not alter the product in any way.

124.   Plaintiff and Class members could not have discovered the defect by exercising reasonable care, and therefore Plaintiff and Class members could not have avoided the injury by exercising ordinary care.

125.   Plaintiff and Class members suffered harm by purchasing the Prescription Diet and Science Diet dog foods that contained elevated levels of vitamin D.  This harm includes the

purchase price of the food, harm to their pets, veterinary care, funeral arrangements, and emotional distress.

126.    Because the manufacturing defect in the Prescription Diet and Science Diet formulas caused harm to Plaintiff and Class members, Defendant is strictly liable for the same.

**COUNT VII**
**Unjust Enrichment**
**(On Behalf Of The Nationwide Class And Subclass)**

127.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

128.    Plaintiff brings this cause of action on behalf of herself and all members of the Nationwide Class and Subclass.

129.    Defendant received substantial monetary benefit from Plaintiff and members of the Class through the purchase of Prescription Diet and Science Diet dog foods.

130.    Defendant knowingly and willingly accepted and enjoyed these benefits.

131.    Defendant knew or should have known that Plaintiff and members of the Class paid for Prescription Diet and Science Diet dog foods with the expectation that said dog foods would be safe, nutritious, beneficial, and made under high quality and safety standards.

132.    Defendant's Prescription Diet and Science Diet dog foods were in fact not safe, nutritious, beneficial, or made under high quality and safety standards.

133.    Defendant's acceptance and retention of Plaintiff's and members of the Class's money was inequitable.

134.    In retaining the monetary benefit paid to them for the defective dog food, Defendant has been unjustly enriched.

135.    As a result of Defendant's negligence, Plaintiff and the Class are entitled to actual damages for the price of Prescription Diet and Science Diet dog food cans they purchased.

136.    Plaintiff and the Class are also entitled to an award of attorneys' fees and costs.

**COUNT VIII**

**Violation Of The California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750,** ***et seq.***
**(On Behalf Of The California Subclass – Injunctive Relief Only)**

137.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

138.    Plaintiff brings this cause of action on behalf of herself and all members of the California Subclass.

139.    Plaintiff and members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

140.    The Prescription Diet and Science Diet dog foods are "goods" within the meaning of Cal. Civ. Code § 1761(a).

141.    The purchases of Prescription Diet and Science Diet dog foods by Plaintiff and members of the California Subclass are "transactions" within the meaning of Cal. Civ. Code § 1761(e).

142.    Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(e).

143.    Defendant represented to Plaintiff and the California Subclass that their Prescription Diet and Science Diet dog foods were:

a.   Safe for consumption by dogs;

b.   Made with the highest quality control and safety standards;

c.   Made with ingredients that are "examined to ensure [their] safety . . . [and] ensure your pet gets the stringent, precise formulation they need";

d.   That the Prescription Diet provided "Therapeutic Dog Nutrition";

e.   That the Prescription Diet "provides complete and balanced nutrition for maintenance of adult dogs and growing puppies";

f.   Recommended by or developed in cooperation with veterinarians and other medical professionals; and

g.   Will assist with a variety of medical conditions in dogs, or generally help dogs "live a long and healthy life."

144.   Defendant's representations about the Prescription Diet and Science Diet dog foods were false in that they:

a.   Were sold with hazardous, elevated levels of vitamin D despite being advertised as safe for consumption and providing balanced nutrition;

b.   Were not made under high quality control and safety standards;

c.   Did not bestow upon dogs the "precise formulation" dogs need because the dog foods contained hazardous levels of vitamin D;

d.   Did not offer therapeutic or balanced nutrition because the dog foods contained hazardous levels of vitamin D which is acutely harmful to dogs; and

e.   Harmed and even killed dogs, rather than treating medical conditions or generally helping dogs "live a long and healthy life."

145.   These misrepresentations constitute "unfair or deceptive acts or practices" that are prohibited by the California Consumer Legal Remedies Act ("CLRA").  Cal. Civ. Code §§ 1770(a)(5); 1770 (a)(7); 1770(a)(9); 1770(a)(16).

146.   Further, Defendant concealed from and failed to disclose to Plaintiff and the Class that their Prescription Diet and Science Diet dog foods do not conform to the products' labels, packaging, advertising, and statements in that they contained hazardous levels of vitamin D.

147.   Defendant had a duty to disclose to Plaintiff and members of the Class the true quality, characteristics, ingredients, nutrient levels, and suitability of the Prescription Diet and Science Diet dog foods because:

a. Defendant was in a superior position to know the true nature of their products;

b. Defendant was in a superior position to know the actual quality of ingredients, nutrient levels, characteristics, and suitability of Prescription Diet and Science Diet dog foods; and

c. Defendant knew that Plaintiff and members of the Class could not reasonably have been expected to learn or discover that the Prescription Diet and Science Diet dog foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Prescription Diet and Science Diet dog foods.

148. The facts concealed or not disclosed by Defendant to Plaintiff and members of the Class were material in that a reasonable consumer would have considered them important when deciding whether to purchase the Prescription Diet and Science Diet dog foods.

149. The facts concealed or not disclosed by Defendant to Plaintiff and the Class were material in that the Prescription Diet and Science Diet dog foods were advertised as safe, nutritious, and made under high quality and safety control standards, when in fact the dog foods were not.

150. Plaintiff and Class members' reliance on these omissions was reasonable given Defendant's advertising, representations, warranties, and general promotions of their Prescription Diet and Science Diet dog foods.

151. Plaintiff and members of the Class did not know that Defendant was concealing or otherwise omitting material facts.

152. As a direct and proximate result of Defendant's violations, Plaintiff and the California Subclass are also entitled to injunctive relief ensuring Defendant complies with all proper quality and safety standards going forward.

153.    On March 1, 2019, prior to filing this action, a CLRA notice letter was sent to Defendant that complies in all respects with California Civil Code §1782(a).  Plaintiff's counsel sent Defendant the letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's CLRA letter is attached hereto as Exhibit A.

## COUNT IX
### Violation Of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (On Behalf Of The California Subclass)

154.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

155.    Plaintiff brings this cause of action on behalf of herself and all members of the California Subclass.

156.    Defendant represented to Plaintiff and the California Subclass that their Prescription Diet and Science Diet dog foods are:

    a.  Safe for consumption by dogs;

    b.  Made with the highest quality control and safety standards;

    c.  Made with ingredients that are "examined to ensure [their] safety . . . [and] ensure your pet gets the stringent, precise formulation they need";

    d.  That the Prescription Diet provided "Therapeutic Dog Nutrition";

    e.  That the Prescription Diet "provides complete and balanced nutrition for maintenance of adult dogs and growing puppies";

    f.  Recommended by or developed in cooperation with veterinarians and other medical professionals; and

g.   Will assist with a variety of medical conditions in dogs, or generally help dogs "live a long and healthy life."

157.   Defendant's representations about the Prescription Diet and Science Diet dog foods were "untrue and misleading" within the meaning of California False Advertising Law ("CFAL"), Cal. Bus. & Prof. Code § 17500, in that the dog foods:

a.   Were sold with hazardous, elevated levels of vitamin D despite being advertised as safe for consumption and providing balanced nutrition;

b.   Were not made under high quality control and safety standards;

c.   Did not bestow upon dogs the "precise formulation" dogs need because the dog foods contained hazardous levels of vitamin D;

d.   Did not offer therapeutic or balanced nutrition because the dog foods contained hazardous levels of vitamin D which is acutely harmful to dogs; and

e.   Harmed and even killed dogs, rather than treating medical conditions or generally helping dogs "live a long and healthy life."

158.   Defendant knew or reasonably should have known its representations were untrue and misleading.

159.   Plaintiff and the California Subclass members would like to purchase Prescription Diet and Science Diet dog foods in the future if they can be assured that these dog foods are safe for consumption, made with high quality and safety controls, and provide the benefits the dog foods claim to.

160.   As a result of Defendant's violations of CFAL, Plaintiff and the California Subclass are entitled to actual damages for the price of Prescription Diet and Science Diet dog food cans they purchased and medical expenses related to the treatment of their dogs.

161.     Plaintiff and the California Subclass are also entitled to, and do seek injunctive

relief ensuring Defendant comply with all proper quality and safety standards going forward.

<u>**COUNT X**</u>
**Violation of California's Unfair Business Practices Law, Cal. Bus. & Prof. Code §§ 17200, *et***
***seq.***
**(On Behalf Of The California Subclass)**

162.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if

fully stated herein.

163.     Plaintiff brings this cause of action on behalf of herself and all members of the

California Subclass.

164.     Defendant represented to Plaintiff and the California Subclass that its Prescription

Diet and Science Diet dog foods were:

a.   Safe for consumption by dogs;

b.   Made with the highest quality control and safety standards;

c.   Made with ingredients that are "examined to ensure [their] safety . . . [and] ensure
your pet gets the stringent, precise formulation they need";

d.   That the Prescription Diet provided "Therapeutic Dog Nutrition";

e.   That the Prescription Diet "provides complete and balanced nutrition for maintenance
of adult dogs and growing puppies";

f.   Recommended by or developed in cooperation with veterinarians and other medical
professionals; and

g.   Will assist with a variety of medical conditions in dogs, or generally help dogs "live a
long and healthy life."

165.     Defendant's representations about the Prescription Diet and Science Diet dog foods

were false in that the dog foods:

    a.   Were sold with hazardous, elevated levels of vitamin D despite being advertised as safe for consumption and providing balanced nutrition;

    b.   Were not made under high quality control and safety standards;

    c.   Did not bestow upon dogs the "precise formulation" dogs need because the dog foods contained hazardous levels of vitamin D;

    d.   Did not offer therapeutic or balanced nutrition because the dog foods contained hazardous levels of vitamin D which is acutely harmful to dogs; and

    e.   Harmed and even killed dogs, rather than treating medical conditions or generally helping dogs "live a long and healthy life."

166.    Such fraudulent, deceptive, untrue, and misleading representations constitute "unfair competition" within the meaning of California Unfair Business Practices Law ("CUBPL"), Cal. Bus. & Prof. Code § 17200.

167.    As a direct and proximate result of Defendant's unfair competitive practices, Plaintiff and the California Subclass have suffered actual damages in that they purchased Prescription Diet and Science Diet dog foods that were worthless. Plaintiff and members of the California Subclass would not have purchased the Prescription Diet and Science Diet dog foods at all had they known of the risk and/or presence of excessive levels of vitamin D that rendered the products hazardous.

168.    As a result of Defendant's violations of CUBPL, Plaintiff and the California Subclass are entitled to actual damages for the price of Prescription Diet and Science Diet dog food cans they purchased and medical expenses related to the treatment of their dogs.

169.    Plaintiff and the California Subclass are also entitled to, and do seek injunctive relief pursuant to CUBPL § 17203 ensuring Defendant comply with all proper quality and safety standards going forward.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff's and all members of the proposed Class the following relief against Defendant:

a. Injunctive relief requiring Defendant to comply with all proper quality and safety standards when manufacturing its dog food in the future before continuing to sell Prescription Diet and Science Diet canned dog food;

b. An award of damages to Plaintiff and all members of the Nationwide Class and Subclass reimbursing them for the hazardous and worthless cans of Prescription Diet and Science Diet dog food they purchased;

c. An award of damages to Plaintiff and all members of the Nationwide Class and Subclass reimbursing them for various medical expenses caused by Defendant's hazardous dog food;

d. An award of punitive damages to Plaintiff and all members of the Class;

e. An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

f. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate class, finding that Plaintiff is a proper representative of the class, and appointing the lawyers and law firm representing Plaintiff as counsel for the class;

g. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

1

Dated:  March 11, 2019

Respectfully submitted,

2

**BURSOR & FISHER, P.A.**

3

By:  ___/s/ L. Timothy Fisher_____

4

L. Timothy Fisher

5

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940

6

Walnut Creek, CA 94596

7

Telephone: (925) 300-4455
Facsimile: (925) 407-2700

8

E-Mail: ltfisher@bursor.com

9

**BURSOR & FISHER, P.A.**

10

Scott A. Bursor (State Bar No. 276006)
2665 South Bayshore Drive, Suite 220

11

Miami, FL 33133
Telephone: (646) 837-7150

12

Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

13

14

*Attorneys for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Deborah Stewart, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendant conducts a substantial amount of business in the Northern District of California.

3.      While living in San Francisco, California, I purchased one or more cans of Hill's Prescription Diet dog food for my household and my personal use that was later subject to voluntary recall by the United States Food and Drug Administration for hazardous levels of vitamin D. I purchased Hill's Prescription Diet dog food after I read the label on the can that said the food provided clinical, balanced, and therapeutic nutrition and generally represented that it was safe for consumption by dogs. The representations on the label were substantial factors influencing my decision to purchase Hill's Prescription Diet dog food, but they were false. I would not have purchased Hill's Prescription Diet dog food if I had known that the cans of dog food contained harmful, elevated levels of vitamin D.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March 8th, 2019 at San Francisco, California.

_____
DEBORAH STEWART

**EXHIBIT A**

# BURSOR & FISHER

P.A.

**1990 NORTH CALIFORNIA BLVD.**
**SUITE 940**
**WALNUT CREEK, CA 94596-7351**
**www.bursor.com**

**L. TIMOTHY FISHER**
Tel: **925.300-4455**
Fax: **925.407.2700**
ltfisher@bursor.com

March 1, 2019

*Via Certified Mail - Return Receipt Requested*

Hill's Pet Nutrition, Inc.
400 South West 8th Street
Topeka, KS 66603

>       **Re:**   *Notice Letter Concerning Hill's Pet Nutrition, Inc.'s Science Diet and*
>            *Prescription Diet Dog Food*

To Whom It May Concern:

　　　　This letter serves as a preliminary notice and demand for corrective action by Hill's Pet Nutrition, Inc. ("Hill's"), on behalf of our client Deborah Stewart ("Plaintiff"), and all other similarly-situated persons.  This letter serves as notice of breaches of warranty pursuant to U.C.C. § 2-607(3)(A), U.C.C. §§ 2-313 & 2-314, and California warranty law.  This letter also serves as notice pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1782, as well as the consumer protection statutes of all other states in the United States.

　　　　On January 31, 2019, the United States Food and Drug Administration announced a voluntary recall of Hill's canned dog food for elevated levels of vitamin D.  The recall notice indicates that "dogs may exhibit symptoms such as vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss. Vitamin D, when consumed at very high levels, can lead to serious health issues in dogs including renal dysfunction."

　　　　Plaintiff Deborah Stewart owns a dog, Roxy, and purchased Prescription Diet dog food that was subject to the recall.  While using the food, Roxy began to exhibit symptoms of vitamin D toxicity.  These include vomiting, substantial weight loss, and loss of appetite.  Hill's breached express and implied warranties made to our client and the Class regarding the quality and safety of the dog food they purchased. *See* U.C.C. §§ 2-313, 2-314.  Specifically, Hill's warranted that the food was premium dog food with properly-sourced ingredients.  But that was not true, as the food contained elevated levels of vitamin D which resulted in adverse effects to the dog, as described above.  Plaintiff relied on Hill's representations and warranties in choosing to purchase the Hill's product.  Had Plaintiff known the true nature of the product, she would have purchased another brand of dog food.

　　　　Hill's conduct with respect to the promotion and marketing of its Science Diet and Prescription Diet dog food was false and misleading.  By falsely representing that its dog food did not contain elevated levels of vitamin D, Hill's violated the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (a)(7) and (a)(9), which

BURSOR&FISHER
P.A.

prohibits representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have, representing that goods or services are of a particular standard, quality or grade, and advertising goods or services with intent not to sell them as advertised.

On behalf of our client and all other purchasers of the recalled Prescription Diet and Science Diet dog foods, we hereby demand that Hill's immediately (1) cease and desist from representing that its Prescription Diet and Science Diet formulas are premium dog food fit for consumption by dogs and (2) make full restitution to all purchasers of the recalled batches of Prescription Diet and Science Diet of all money obtained from sales thereof.

We also demand that Hill's preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning the advertising and marketing of Hill's Science Diet and Prescription Diet;

2.      All documents concerning the formulation, recipe and/or ingredients of Hill's Science Diet and Prescription Diet;

3.      All documents concerning the pricing and sale of Hill's Science Diet and Prescription Diet;

5.      All communications with customers concerning complaints or comments concerning Hill's Science Diet and Prescription Diet.

6.      All communications between Hill's and its suppliers.

7.      All documents regarding Hill's quality-control policies.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter. This letter also serves as a thirty (30) day notice and demand requirement under California Civil Code § 1782 for damages. Accordingly, should Hill's fail to rectify the situation on a class-wide basis within 30 days of receipt of this letter, we will seek actual damages, plus punitive damages, interest, attorneys' fees and costs.

Please contact me immediately if you wish to discuss an appropriate way to remedy this matter. If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

L. Timothy Fisher